**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**(ABERDEEN DIVISIONAL OFFICE)**

IN RE:                                             CASE NUMBER: 19-10423-JDW

JIMMIE LOIS KING                                   CHAPTER 13

    DEBTOR

## OBJECTION TO CONFIRMATION OF THE PLAN

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Indenture Trustee for NRPL Trust 2018-2 ("Secured Creditor"), by and through its undersigned counsel, objects to confirmation of Debtor's Chapter 13 Plan (DE #2), and states as follows:

1. Debtor, Jimmie Lois King ("Debtor"), filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on January 30, 2019.

2. Secured Creditor holds a security interest in the Debtor's real property located at 4543 HIGHWAY 4 W, HOLLY SPRINGS, FL 38635, by virtue of a Mortgage recorded on May 21, 1998 in Book 141, at Page 500 of the Public Records of Benton County, MS. Said Mortgage secures a Note in the amount of $59,427.65.

3. The Debtor filed a Chapter 13 Plan on January 30, 2019.

4. The Plan includes payments toward the Note and Mortgage with Secured Creditor; however, the figures used by the Debtor are inaccurate. The correct pre-petition arrearage due Secured Creditor is $5,699.64, whereas the Plan proposes to pay only $3,813.32. Therefore, the Plan is not in compliance with the requirements of 11 U.S.C. §§ 1322(b)(3) and 1325(a)(5) and cannot be confirmed. Secured Creditor objects to any plan which proposes to pay it anything less than $5,699.64 as the pre-petition arrearage over the life of the plan.

5.  The Plan does not appear feasible due to inadequate treatment of Secured Creditor's claim. Thus, the plan violates the provisions of 11 U.S.C. § 1325(a)(3) and cannot be confirmed.

**WHEREFORE**, Secured Creditor respectfully requests this Court sustain the objections stated herein and deny confirmation of Debtor's Plan, and for such other and further relief as the Court may deem just and proper.

**THE SUNDMAKER FIRM, L.L.C.**

*/s/ Gregory J. Walsh*
GREGORY J. WALSH (MS Bar No. 104344)
1027 Ninth Street
New Orleans, LA  70115
Telephone: (504) 568-0517
Fax: (504) 568-0519
greg@sundmakerfirm.com
**Attorney for Secured Creditor**

## CERTIFICATE OF SERVICE

I certify that the foregoing has been served on all interested parties as listed below by depositing same in the U.S. Mail, postage prepaid, and/or by electronic mail this 21st day of March, 2019:

| | | |
|---|---|---|
| Locke D. Barkley<br>6360 I-55 North<br>Suite 140<br>Jackson, MS 39211 | United States Trustee<br>501 East Court Street<br>Suite 6-430<br>Jackson, MS 39201 | Robert H. Lomenick, Jr.<br>P.O. Box 417<br>Holly Springs, MS 38635 |

Jimmie Lois King
4543 Hwy 4 W
Holly Springs, MS 38635

*/s/ Gregory J. Walsh*
Gregory J. Walsh

# Loan Agreement

**MISSISSIPPI
1ST MORTGAGE
VARIABLE-FIXED RATE**

**LENDER:**
ASSOCIATES FINANCIAL SERVICES COMPANY
OF DELAWARE, INC.
9775 300 E CARPENTER PKWY 2PL IRVING    MISSISSIPPI

| | | | | | | | FINANCE CHARGE |
|---|---|---|---|---|---|---|---|
| | 20 | 5/19/98 | | 05/20/28 | 5.00 | | |

**BORROWER:**
KING, ELLIS
RR 2 BOX 437
HOLLY SPRINGS
MS  38635-9410

Amounts: 1035.75 ... 8.00 ... 128161.15 ... 128161.15
5.00 ... 5.00
59427.65
59427.65 ... 187588.80

360  360  521.08  000.00  5.00  000  6.00  06/20/98

**CO-BORROWER:**
KING, JIMMIE LOIS

[X] **AGREED RATE OF INTEREST:** 9.99 % per year on the unpaid Principal Balance.

[ ] **AGREED RATE OF INTEREST:** THIS IS A VARIABLE INTEREST RATE LOAN AND THE INTEREST RATE WILL INCREASE OR DECREASE WITH CHANGES IN THE BANK PRIME LOAN RATE. The interest rate will be _____ percentage points above the "Bank Prime Loan Rate" published in the Federal Reserve Board's Statistical Release H.15. The initial Bank Prime Loan rate is _____ %, which is the published rate as of the last business day of _____; therefore, the initial interest rate is _____ % per year. The interest rate will increase or decrease with changes in the Bank Prime Loan rate when the Bank Prime Loan rate, as of the last business day of the preceding month, has increased or decreased by at least 1/4th of a percentage point from the Bank Prime Loan rate on which the current interest rate is based. The interest rate cannot increase or decrease more than 2% in any year. In no event, however, will the interest rate ever be less than _____ % per year nor more than _____ % per year. The interest rate will not change before the First Payment Date. Interest will be computed on the unpaid Principal Balance. Adjustments in the Agreed Rate of interest shall be given effect by changing the dollar amounts of the remaining monthly payments in the month following the anniversary date of the loan and every 12 months thereafter so that the total amount due under this Loan Agreement will be paid by the last payment date. Associates waives the right to any interest rate increase after the last anniversary date prior to the last payment due date of the loan.

**REPAYMENT**
I promise to pay you, at your office, the principal balance together with interest thereon calculated at the Agreed Rate of Interest shown above until fully paid. Interest accrues on a daily basis.

I will repay my loan by making the monthly payments set forth in the Payment Schedule. Payments will be made on the same date of every month beginning on the 1st Payment Date stated above until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month.

My payments (whether regular payments or prepayments) will be applied first to any accrued unpaid interest, second to authorized charges (such as late fees or bad check fees), and thereafter to my outstanding principal balance, or in any other order you choose. Any late fees will be due and payable in addition to my regular payments.

Since interest accrues daily, if I do not regularly make my payments on the scheduled due dates, my regular payment amount may not be sufficient to pay the accrued interest, and therefore the amount I borrowed may not decrease as scheduled. All amounts owed will be due and payable on the Last Payment Date shown above.

After maturity, interest shall be charged at the Agreed Rate of Interest.

**DEFAULT**
I will be in default if I fail to pay any payment or part of a payment on time or if I fail to comply with any of the terms of the Deed of Trust on the real estate given as security for this loan.

If I default, you have the right to declare the entire unpaid amount of my loan immediately due and payable without giving me notice or asking me to pay. If you declare the balance of my loan due and payable, you have the rights and remedies provided for in the Deed of Trust that secures this loan and to require me to pay any deficiency.

**LATE CHARGE**
If any payment is 15 days late, I agree to pay a late charge equal to 4% of the unpaid amount of the late payment or $5.00, whichever is less.

**ATTORNEY FEES**
I agree to pay reasonable attorney's fees if this Loan Agreement is referred for collection to an attorney who is not your salaried employee.

**PREPAYMENT**
I have the right to pay in advance at any time. If this loan is prepaid in full, no part of the loan fee will be refunded.

**PREPAYMENT PENALTY**
If I prepay this loan in full within 5 years from the Loan Date, I agree to pay a prepayment penalty in an amount equal to 1 percent of the unpaid Principal Balance of the loan on the date of prepayment.

If I prepay this loan in full within 4 years from the Loan Date, I agree to pay a prepayment penalty in an amount equal to 2 percent of the unpaid Principal Balance of the loan on the date of prepayment.

If I prepay this loan in full within 3 years from the Loan Date, I agree to pay a prepayment penalty in an amount equal to 3 percent of the unpaid Principal Balance of the loan on the date of prepayment.

If I prepay this loan in full within 2 years from the Loan Date, I agree to pay a prepayment penalty in an amount equal to 4 percent of the unpaid Principal Balance of the loan on the date of prepayment.

If I prepay this loan in full within 1 year from the Loan Date, I agree to pay a prepayment penalty in an amount equal to 5 percent of the unpaid Principal Balance of the loan on the date of prepayment.

However, this provision shall not apply if I prepay the loan in full with the proceeds of another loan from you or one of your affiliates.

**DELAY IN ENFORCEMENT**
You can delay enforcing your rights under this Loan Agreement without losing them. If I default in complying with any of the terms of my loan and you do not declare the loan balance immediately due and payable, this does not mean you cannot do so in the future if I default again.

**SECURITY FOR THIS LOAN**
I give you a Deed of Trust dated the same as this Loan Agreement to secure payment of my loan. I agree to pay the actual costs you incur in recording a release or satisfaction of this security instrument when my loan is paid in full.

**ARBITRATION**
The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

The following Notice is applicable if the proceeds of this loan are applied in whole or in substantial part for the purchase of goods or services from a seller who 1) refers consumers to the creditor, or 2) is affiliated with the creditor by common control, contract, or business arrangement.

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The Alternative Mortgage Transaction Parity Act of 1992 governs certain provisions of this Loan Agreement.

I acknowledge receipt of a completely filled-in copy of this Loan Agreement.

_____ (BORROWER)
_____ (BORROWER)
_____ (WITNESS)
_____ (WITNESS)

607522 REV. 4-98

NOTE

| RR 2 BOX 437 | 300 E CARPENTER FRWY 2PLZ |
| HOLLY SPRINGS   MS   38635-9410 | IRVING                TX   75062-2727 |

CO-BORROWER:

| DATE OF LOAN | ACCOUNT NUMBER |
|---|---|
| May 19, 1998 | |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.99 % | $ 128161.15 | $ 59427.65 | $ 187588.80 |

PAYMENT SCHEDULE – Payments are payable monthly       1st Payment Date 06/20/98

360 Payments   360 at $ 521.08   followed by 000 at $ $.00   followed by 000 at $ $.00

VARIABLE RATE: If this is a variable interest rate loan, this transaction has a variable rate feature for which variable rate disclosures have been provided earlier.

LATE CHARGE: If a payment is 15 days late, you will be charged 4% of the unpaid amount of the late payment or $5.00, whichever is less.

PREPAYMENT: If you pay off early, you   [X] may  [ ] will not   have to pay a penalty. There will be no rebate of the prepaid finance charge.

SECURITY: [X] You are giving a security interest in your real estate located at: _____
RR 2 BOX 437                    HOLLY SPRINGS     MS

[ ] You are giving a security interest in the real estate being purchased and which is located at: _____

ASSUMPTION: If this loan is a purchase money transaction, someone buying your home may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for additional information about non-payment, default, any required repayment of your indebtedness in full before the scheduled date, prepayment refunds and penalties and security interests.

[ ] This is a variable interest rate loan. _____  _____
[X] This is a fixed interest rate loan. _____  _____
                                        BORROWER        BORROWER

INSURANCE:
Credit insurance is not required to obtain this loan and will not be provided unless you sign below. Insurance provided by the Creditor may be issued by an affiliated company which expects to profit from the insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | ___ months, beginning on the Effective Date of Insurance | $ $.00 | I want single credit life insurance. |
| Joint Borrower Credit Life Insurance | ___ months, beginning on the Effective Date of Insurance | $ $.00 | We want joint borrower credit insurance. |
| Credit Accident and Health Insurance | ___ months, beginning on the Effective Date of Insurance | $ $.00 | I want credit accident and health insurance. |

CANCELLATION OPTION: You may cancel all, but not part of, the credit insurance coverages on this loan by returning the credit insurance certificates to the office where the loan was made. The unearned credit insurance premium will be credited to your account. If cancellation occurs within 15 days from the above date, the entire credit insurance premium will be credited to your account. Even though a credit is made to your account because the credit insurance is cancelled, you will still be obligated to continue making payments on your loan as scheduled.

NOTICE: SEE OTHER SIDE FOR ADDITIONAL PROVISIONS.

I have received a copy of this statement.

# NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

**Loan Number:** ███████

**Loan Date:** 5/19/1998     **Original Loan Amount:** $ 59,427.65

**Originator:** ASSOCIATES FINANCIAL SERVICES COMPANY OF DELAWARE, INC
**Original Mortgagor:** ELLIS KING AND JIMMIE LOIS KING
**Property Address:** RR 2 BOX 437, HOLLY SPRINGS, MS 38635-9410

Pay to The Order of
CHRISTIANA TRUST, A DIVISION OF
WILMINGTON SAVINGS FUND SOCIETY, FSB,
AS TRUSTEE OF NORMANDY MORTGAGE
LOAN TRUST, SERIES 2013-9
Without Recourse

ASSOCIATES FIRST CAPITAL CORPORATION
SUCCESSOR BY MERGER TO ASSOCIATES
FINANCIAL SERVICES COMPANY, INC.
SUCCESSOR BY MERGER TO ASSOCIATES
FINANCIAL SERVICES OF DELAWARE, INC.

By: *[signature]*

Melanie A. Arndt, Vice President

Lender—Beneficiary—Corporation—herein refers to Associates Financial Services Company of Delaware, Inc.

Principal Balance $ 59,427.65

**WITNESSETH:**

THAT FOR AND IN CONSIDERATION of $1.00 cash in hand paid, the receipt of which is hereby acknowledged and for the purpose of securing the payment of the Loan Agreement hereinafter described, any renewal thereof the performance of the covenants and agreements hereinafter set out, the Grantors hereby grant, bargain, sell and convey unto the Trustee, and his successors in Trust, the following described real estate situated in the _____ of _____ Judicial District of  Benton  County, State of Mississippi, more particularly described as follows, to wit:

( See attached )

C
M
T
B

including also fixtures now attached to the real estate herein described.

To have and to hold said real estate to the above named Trustee, and his successors in trust, forever. Grantors covenant that we are lawfully seized of said property, have a good right to convey it, and that the same is unencumbered, except current taxes.

Grantors further covenant and bind themselves, their heirs and representatives, to warrant and defend the title to said property, to the above named Trustee and his successors in trust, and his assigns, forever, against the lawful claims of all persons whomsoever.

Grantors, jointly and severally, as to the real estate described above, specifically waive all rights of Homestead exemption, Dower and Curtesy rights, appraisement, redemption, equity of redemption, and all other similar rights or exemptions and benefit now in effect or hereafter enact, in favor of the Grantors, now or hereafter existing in the State where the real estate is located and the State of the Resident, now or at anytime hereafter, of the Grantors.

This conveyance is made in Trust for the following uses in Trust and for no other purpose, to wit: (1) To secure and make certain the prompt and faithful payment of a Loan Agreement of even date herewith in the principal balance stated above, together with interest thereon at the interest rate specified in the Loan Agreement and payable to Associates Financial Services Company of Delaware, Inc. in  360  consecutive monthly installments with the first installment due  6/20/98  and thereafter a payment on the same day of each succeeding month until paid in full; and (2) Any renewals or extensions of the aforementioned Loan Agreement or any part or installment thereof; and (3) To secure all other obligations of the Grantors hereunder.

If the above-described Loan Agreement is further secured by a lien on other property, real personal or mixed, Corporation shall not be compelled to exhaust such other security before requesting that the Trustee proceed hereunder.

Grantors warrant and covenant that if the said real estate is sold, agreed to be sold, conveyed, assigned or alienated by said Grantors, the Corporation may, at its option, immediately declare the indebtedness secured hereunder, due and payable, whether due according to its face or not, and commence foreclosure proceedings.

Grantors agree to pay all taxes and assessments levied on the within described real estate when the same becomes due and payable, and promptly deliver the official receipts therefor to the Corporation or a certificate signed by each taxing official to whom any said taxes or assessments shall be payable, that all such taxes and assessments due to be paid such official have been paid for the current year.

Grantors will keep the improvements now existing or hereinafter erected on the premises insured against loss or damage by fire and other hazards and perils included within the scope of a standard extended coverage endorsement, and such other hazards as Beneficiary may require, in such amounts and for such periods as Beneficiary may require, and in an insurance company, or insurance companies acceptable to Beneficiary. All insurance policies and renewals shall designate Beneficiary as mortgage loss payee and shall be in a form acceptable to Beneficiary. Grantors hereby confer full power on Beneficiary to settle and compromise all loss claims on all such policies, to demand, receive, and receipt for all proceeds becoming payable thereunder, and, at his option, to apply same toward either the restoration or repair of the premises or the payment of the Loan Agreement. Any application of such proceeds toward payment of the Loan Agreement shall not extend or postpone the due date of monthly installments due under the Loan Agreement.

If Grantors fail to perform the covenants and agreements contained in this Deed of Trust including without limitation, covenants to pay taxes, procure insurance, and protect against prior liens, Beneficiary may at its option, but shall not be required to, disburse such sums and take such actions necessary to pay such taxes, procure such insurance, or otherwise to protect his interest. Any amount disbursed by Beneficiary hereunder shall be an additional obligation of Grantors secured by this Deed of Trust. Unless Grantors and Beneficiary agree otherwise, all such amounts shall be payable immediately by Grantors upon notice from Beneficiary to Grantors, and may bear interest from the date of disbursement by Beneficiary at the lesser of the Agreed Rate of Interest stated in the Loan Agreement or the highest rate permissible by applicable law. Nothing contained in this paragraph shall require Beneficiary to incur any expense or take any action whatsoever.

It is agreed that if default be made in the payment of any of the aforesaid taxes or assessments, or in procuring and maintaining of insurance as above represented or in the event of the failure of the Grantors to keep the business

_Ellis King_

_Jimmie Lois King_

## ACKNOWLEDGMENT

STATE OF MISSISSIPPI, COUNTY OF **Marshall** , SS:

Personally appeared before me, the undersigned authority in and for the said county and state on this **19** day of **May**, **1998**, within my jurisdiction, the within named **Ellis King and wife Jimmie Lois King** who acknowledged that **t** he **y** executed the above and foregoing instrument.

_____
Notary Public

(SEAL)

My commission expires: _____
Notary Public State of Mississippi At Large
My Commission Expires: August 30, 2000
BONDED THRU HERDEN-MARCHETTI, INC.

Index Instruction:   Northwest Corner of Section 23, Township 3
South, Range 1 West

THIS INSTRUMENT PREPARED BY:
D. ROOK MOORE III
P.O. BOX 356
HOLLY SPRINGS, MS 38635
601/252-2252

Highway No. 4 at the Northwest corner of Henry Reaves property; thence South 6 degrees 04' West along wire fence as it now exists 146.2 feet to a point; thence South 57 degrees 0' West 134.0 feet to an iron pin; thence South 73 degrees 44' West 139.0 feet to an iron pin; thence North 0 degrees 24' East 204.7 feet to an iron pin in the South right-of-way of MS Highway No. 4; thence North 76 degrees 56' East along said South right-of-way line 235.0 feet to the point of beginning, containing 1.0 acre, more or less and according to survey prepared by Eddie Boatwright dated June 15, 1991.

6/15/74

Jimmie Lewis King

**After Recording Return To:**
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO 63368
Doc Prep/Booking & Closing

This document was prepared by Loan Modification Team
CitiMortgage
1000 Technology Drive, MS 420R
O'Fallon, MO 63368-2240

_____ [Space Above This Line For Recording Data] _____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower(s) ("I"): JIMMIE LOIS KING
Lender or Servicer ("Lender"): CitiMortgage, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):05/19/98
Loan Number: ▮▮▮▮▮▮▮▮
Property Address ("Property"): RR S BOX 437, HOLLY SPRINGS, MS 38635-7063

Legal Description: ATTACHED

If my representations and covenants herein continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

---

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date (as defined in Section 3), the Lender determines that any of my representations herein are no longer true and correct or any covenant by me has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 07/16/13 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 08/01/13.

   A. **Unpaid Principal Balance.** As of 07/01/13, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $72,519.47 consisting of the unpaid amounts loaned to Borrower, previously deferred amounts, if any, plus any interest and other amounts capitalized.

   B. **Waived or Forgiven Late Charges.** For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive accrued, unpaid late charges subject to the Borrower's compliance with the terms of this Agreement. The total amount of accrued, unpaid late charges waived or forgiven is U.S. $ 0.00.

   C. **Deferred Principal Balance.** For and in consideration of the modification of the loan as described herein, Lender has agreed to defer a portion of the Unpaid Principal Balance in an amount equal to $0.00("Deferred Principal Balance"). The Deferred Principal Balance, if any, is in addition to the Modified Principal Balance and shall continue to be due and owing by Borrower to Lender; provided, however, Lender agrees that for so long as Borrower makes the principal and interest payments in a timely manner and ultimately pays the Deferred Principal Balance to the extent obligated under the terms of the Note or Security Instrument, which if not sooner demanded, shall be due and payable upon the earlier of any voluntary loan payoff or on the Maturity Date, when the final balloon payment will become due and payable. Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Deferred Principal Balance. Any deferred principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

D.  **Principal Reduction Alternative.** You qualify for a total Principal Reduction Alternative in the amount of $25,224.47. You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive $8,408.16 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

E.  **Modified Principal Balance.** Borrower acknowledges that the Modified Principal Balance payable under the Note and the Security Instrument shall be calculated as set forth below:

| | | |
|---|---|---|
| i. | Principal Balance | $57,631.16 |
| ii. | Accrued unpaid interest | $13,931.00 |
| iii. | Accrued unpaid late charges | $0.00 |
| iv. | Advances regarding delinquent real estate taxes or to pay insurance premiums | $754.80 |
| v. | Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $157.51 |
| vi. | Previously deferred amounts | $0.00 |
| | Total (the "Unpaid Principal Balance" from Section 3(A)) | $72,519.47 |

Less:

| | |
|---|---|
| Forgiven Late Charges from Section 3(B) | $0.00 |
| Deferred Principal Balance from Section 3(C) | $0.00 |
| Principal Reduction from Section 3(D) | $25,224.47 |
| Appraisal fees, attorneys fees, costs, Foreclosure or other legal expenses and advances Regarding prior lien-holder or other claims | $45.00 |

Plus:

| | |
|---|---|
| Advances to establish initial escrow account, if any | $0.00 |
| Total (the "Modified Principal Balance") | $47,250.00 |

F.  **Repayment Terms.** Borrower promises to pay the Modified Principal Balance, plus interest, to the order of Lender as set forth below:

   1). The Maturity Date, as hereinafter defined, is 05/01/28. If on the Maturity Date Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

   2). The interest rate will begin to accrue as of 07/01/13 and the first new monthly payment on the Modified Principal Balance will be due on 08/01/13.

3). $0.00 of the Unpaid Principal Balance shall be deferred and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $25,224.47, of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 05/01/13, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 47,250.00. Interest at the rate of 4.61500% will begin to accrue on the Interest Bearing Principal Balance as of 07/01/13 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 08/01/13. My payment schedule for the modified Loan is as follows

| Years | Int Rate | Int Rate Change Date | Monthly Principal and Int Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-15 | 4.615% | 07/01/13 | $367.08 | $104.89, may adjust periodically | $471.87, may adjust periodically | 08/01/13 | 178 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, or Smart Step program, are hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

> THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

4. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

5.. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, Agreements, and requirements of Loan Documents including my Agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding Agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination Agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination Agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter Agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Agreement shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the Modified Principal Balance.

O. I acknowledge that the Deferred Principal Balance set forth above may or may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless I acknowledge that such Deferred Principal Balance is due and payable as set forth above.

P. Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Agreement, I understand that I enter this Agreement voluntarily and that this Agreement, or actions taken by the Lender in relation to this Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

## LEGAL DESCRIPTION

Commence at the Northeast Corner of Section 23, Township 3 South, Range 1 West, Benton County, MS; thence South 79 degrees 23' West 834.4 feet to the point of beginning in the South right-of-way line of Mississippi Highway No. 4 at the Northwest corner of Henry Reaves property; thence South 6 degrees 04' West along wire fence as it now exists 146.2 feet to a point; thence South 57 degrees 0' West 134.0 feet to an iron pin; thence South 73 degrees 44' West 139.0 feet to an iron pin; thence North 0 degrees 24' East 204.7 feet to an iron pin in the South right-of-way of MS Highway No. 4; thence North 76 degrees 56' East along said South right-of-way line 235.0 feet to the point of beginning, containing 1.0 acre, more or less and according to survey prepared by Eddie Boatwright dated June 15, 1991.

[ ] MERS LOAN. If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of 1901 E Voorhees Street Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

EXECUTED effective as of the day and year first above written.

_____
*Jimmie Lois King*
JIMMIE LOIS KING

7/29/13
Date

ACCEPTED AND AGREED TO BY:
CitiMortgage, Inc. Lender or Power of Attorney for Lender

By: _____

_____ [Space Below This Line For Acknowledgement if applicable.
Remove if agreement is not being recorded.] _____

INDIVIDUAL ACKNOWLEDGMENT

State of MISSISSIPPI
County of BENTON

Before me, the undersigned authority, on this day personally appeared, JIMMIE LOIS KING known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this 29th day of July, 2013

Kathy M. Davis, CC
Notary Public
L. Fuller, D.C.

```
Benton County, Mississippi
Filed and Recorded
SEPTEMBER 12 2013    11:29:05AM
Inst. 201301006 Book 0227 Page 301
Marlene McKenzie, Chancery Clerk
```

PREPARED BY & RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092
(888) 316-7466

**Assignment of Deed of Trust**            Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, ASSOCIATES FIRST CAPITAL CORPORATION SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES COMPANY, INC. SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES OF DELAWARE, INC. 4050 REGENT BLVD, MAIL STOP N2A-212, IRVING, TX 75063 (Assignor) by these presents does assign and set over, without recourse, to CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-9 1610 E. St. Andrew Place, Suite B, Santa Ana, CA 92705 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by ELLIS KING AND WIFE JIMMIE LOIS KING to ASSOCIATES FINANCIAL SERVICES COMPANY OF DELAWARE, INC.. Trustee: D. ROOK MOORE, III  Said deed of trust Dated: 5/19/1998 is recorded in the State of MS, County of Benton on 5/21/1998, at Book 141 Page 500 AMOUNT: $ 59,427.65   Property Address: RR 5 BOX 437, HOLLY SPRINGS, MS 38635
SECTION 23, TOWNSHIP 3 SOUTH, RANGE 1 WEST   ASSIGNOR PHONE # 800-283-7918 AND ASSIGNEE PHONE # 949-517-7000
IN WITNESS WHEREOF, the Undersigned Corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: 09/09/2013
ASSOCIATES FIRST CAPITAL CORPORATION SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES COMPANY, INC. SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES OF DELAWARE, INC.

By: _____
Melanie A. Arndt, Vice President

State of Texas, County of Tarrant
On 09/09/2013, before me, the undersigned, Melanie A. Arndt, who acknowledged that he/she is Vice President of/ for ASSOCIATES FIRST CAPITAL CORPORATION SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES COMPANY, INC. SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES OF DELAWARE, INC. and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of ASSOCIATES FIRST CAPITAL CORPORATION SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES COMPANY, INC. SUCCESSOR BY MERGER TO ASSOCIATES FINANCIAL SERVICES OF DELAWARE, INC. .

Notary public, Julie Bacon
My commission expires: November 30, 2014

MS Benton